# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BECCI DOWELL,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**GLOBAL EQUITY FINANCE, INC.**, a California corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Becci Dowell ("Plaintiff" or "Dowell") brings this Class Action Complaint and Demand for Jury Trial against Defendant Global Equity Finance, INC. ("Global Equity Finance") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls without consent to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC") and to consumers who have specifically asked the Defendant to stop calling them. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.      Plaintiff Becci Dowell is a resident of New Bloomfield, Pennsylvania.

2.      Defendant Global Equity Finance is a California corporation headquartered in San Diego, California. Defendant Global Equity Finance conducts business throughout this District and the U.S.

## JURISDICTION AND VENUE

3.      This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4.      This Court has personal jurisdiction over the Defendant since the Defendant conducts business in this District and made calls into this District.

5.      The venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made into this District.

## INTRODUCTION

6.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress

have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

8.      A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id*.

9.      Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10.      According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in September 2022 alone, at a rate of 139.9 million calls per day. www.robocallindex.com (last visited October 25, 2022).

11.      The FCC also has received an increasing number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14.     Defendant Global Equity Finance provides loan-related products to consumers including mortgage financing and loans. [3]

15.     Defendant Global Equity Finance places telemarketing calls to consumers to solicit their loan products and/or services, including to phone numbers listed on the National Do Not Call list, like in Plaintiff Dowell's case.

16.     To make matters worse, Defendant Global Equity Finance continues to call consumers even after they have explicitly told them to stop calling.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/global-equity-finance/about/

17.    Defendant Global Equity Finance's sales associates are expected to place a minimum of 200 outbound sales calls each day soliciting loan offers, as per this job offer for a sales associate:

**Responsibilities:**
- Making outbound calls (200 plus/day)
- Prequalifying homeowners for Loans
- Working with our top mortgage loan consultants
- Hitting daily quotas (10 transfers a day)
- Keeping a positive attitude and demonstrating a willingness to learn and grow

To apply for this position, please email your resume and optional cover letter to careers@geqfinance.com. [4]

18.    Many of Defendant's employees have posted reviews about Defendant's cold calling practices, including:

Current Employee

**SA**

Dec 7, 2021 - Sales in San Diego, CA

○ Recommend    ○ CEO Approval    ○ Business Outlook

Pros
Great manager, good overall company

Cons
- Cold calling to tough leads [5]

---

[4] https://geqfinance.com/career/#1586250742224-4f9939dd-43a1
[5] https://www.glassdoor.com/Reviews/Global-Equity-Finance-Sales-Reviews-EI_IE567837.0,21_KO22,27.htm

**super chill**

Sales Associate (Current Employee) - Tucson, AZ - August 16, 2018

It is an ok job for people who wanted to get a fast job, there are alot of young people who range from 18 maybe 28-29. it's alot of cold calling and half the day you are sitting there just waiting for people to answer and half the time they hang up or yell at you (which is most places who cold call) it can get very boring sometimes but luckily it's such a small group and for the most part everyone gets along so we all just talk

There is a high turnover rate, people are either getting fired or come a few days then never return. My training was 2 days and then they just throw you on the phones. Dress is supposed to be business casual but we pretty much wear anything.

- [6]

19.    Several consumers have posted complaints about the unsolicited calls, going as far as saying that they have told Global Equity to stop calling and yet continue to receive calls: including:

- "I have been getting an average of 4 calls a day from this company, with whom I have never done business. I asked the last caller on 10/6 to stop calling me, but I received 3 more calls today. I have reported each call to the Do Not Call Registry, as my number has been registered as Do Not Call since 2007. I request no further harassment from this company."[7]

- "This company for the last two months have called me NINE times a day every day . They ask for a ******* .. which I have told them I don't know .. each time they state they will take my number out until I spoke to a man that informed me that he will call every day as many times as he chooses and refused to give me a manager . I have all of my calls on my cell phone

---

[6] https://www.indeed.com/cmp/Global-Equity-Finance/reviews?fjobtitle=Sales+Associate

[7] https://www.bbb.org/us/ca/san-diego/profile/real-estate-loans/global-equity-finance-inc-1126-171985131/complaints

that have been from this company and I am in the process of speaking to attorney about filing a suit for harassment. Please let other consumers know about this obnoxious company"[8]

20.   In addition, a number of consumers have posted complaints online regarding unsolicited telemarketing calls they received from Defendant Global Equity Finance, such as those received by Plaintiff Dowell, including:

- "This company recently obtained my cell phone number. After politely asking several times to have my number removed, and repeatedly hung up on, I finally spoke with a male representative who agreed to remove my number. I'm currently waiting to see if this will stop the dozen calls + I receive each day. This is borderline harassment and all of these calls are unsolicited -- I am also on the donotcall list. If this does not stop I will be reporting this company. Why would someone want to trust a company like this with their home mortgage is this is how they treat people on the phone? Shame on you all for awful phone etiquette."[9]

- "This company calls my cell several times a day under different numbers"[10]

---

[8] *Id.*

[9] https://www.google.com/search?q=global+equity+finance

[10] *Id.*

- "These guys call me relentlessly. I tell them over and over to take me off their call list. I am now reporting their number as a spam caller. I wouldn't trust them as far as I could throw them."[11]

- "This is just an aggressive predatory telemarketing scam! I've received 9 unsolicated calls in two days."[12]

- "These guys have called me 6 times today (and its not even 2pm PST) trying to get me to refinance my house. I don't own a house and I've asked EVERY LAST ONE of their $10hr telemarketers to take me off their list. Every time one of you guys call me Im going to pay some kid $10.00 per review to write my telemarketing experience with your company on every consumer review website until you have ZERO stars. SO for the umpteenth time PLEASE TAKE ME OFF YOUR CALL LIST. I DO NOT OWN A HOME. Thank you. I have also reported these guys to the following government agencies..."[13]

**PLAINTIFF DOWELL'S ALLEGATIONS**

21.    Plaintiff Dowell's cellular phone number ending in 4016 has been registered on the DNC since September 27, 2019.

---

[11] *Id.*

[12] https://www.yelp.ca/biz/global-equity-finance-san-diego-2

[13] *Id.*

22.    Plaintiff Dowell uses her cellular phone number for personal and residential purposes only.

23.    In August 2022, Plaintiff started receiving telemarketing calls from Defendant Global Equity Finance soliciting assistance in acquiring a mortgage loan.

24.    On August 18, 2022, Plaintiff received 3 calls from Defendant that were not answered, including at 11:50 AM from 717-750-1112; at 2:02 PM from 717-750-1087; and at 4:29 PM from 717-750-1087.

25.    On the same day, Plaintiff received a 4th call from Defendant, from phone number 717-750-1287 that she did answer. When Plaintiff answered this call, a Global Equity Finance employee began qualifying Plaintiff for a mortgage loan. Plaintiff told this employee that she was not interested in dealing with Global Equity Finance and asked to have her number removed from the company call list.

26.    Despite her request for the calls to stop, Plaintiff received the following unsolicited calls from Defendant on the following dates.

- August 19, 2022 from 717-750-1087 at 11:36 AM

- August 19, 2022 from 717-200-8196 at 1:47 PM and 4:29 PM

- August 19, 2022 from 717-200-8196 at 6:41 PM

- August 22, 2022 from 717-750-1087 4:30 PM (3 calls)

- August 22, 2022 from 717-750-1112 at 6:41 PM

27.    On August 22, 2022, at 6:49pm Plaintiff called the Defendant back to the phone number 717-750-1112. She spoke to an employee who identified the company name as Global Equity Finance. Plaintiff told the employee that she is receiving unwanted calls and she specifically asked for them to stop. The employee answered telling Plaintiff Dowell that she should just stop answering the calls if she does not want to receive them.

28.    Frustrated by the aforementioned call, Plaintiff sent a text message to Defendant on August 22, 2022, to 717-501-1112 at 6:54 PM demanding to be removed from their call list.

29.    Plaintiff continued to receive calls from Defendant Global Equity Finance, despite having made repeated clear stop requests on the following dates:

- August 23, 2022, from 717-750-1087 at 11:40 AM

- August 23, 2022, from 717-200-8186 at 1:58 PM

- August 29, 2022, from 717-673-7981 at 2:36 PM

- September 6, 2022, from 717-750-1287 at 12:36 PM

- September 7, 2022, from 717-200-8196 at 11:55 AM

- September 8, 2022, from 717-654-0823 at 10:06 AM

- September 8, 2022, from 717-200-8186 at 12:11 PM

- September 9, 2022, from 717-645-6200 at 9:34 AM

- September 9, 2022, from 717-750-1087 at 11:57 AM

- September 12, 2022, from 717-750-1287 at 12:16 PM

- September 13, 2022, from 717-750-1287 at 12:09 PM

- September 14, 2022, from 717-750-1287 at 12:20 PM

- September 20, 2022, from 717-750-1087 at 12:09 PM

30.    The unauthorized telephone calls placed by Defendant, as alleged herein, have harmed Plaintiff Dowell in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

31.    Seeking redress for these injuries, Plaintiff Dowell, on behalf of herself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., which prohibits unsolicited telemarketing calls to phone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

32.    Plaintiff Dowell brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendant called Plaintiff.

11

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time, (2) within any 12-month period, (3) for substantially the same reason that Defendant called Plaintiff, (4) including at least once after the person requested that Defendant or its agent to stop calling.

33.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

34.    **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

35.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class.

Common questions for the Classes include, but are not necessarily limited to the following:

(a)   whether Defendant placed multiple calls to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to make the calls;

(b)   whether Defendant or their agents placed multiple calls to Plaintiff and members of the Internal Do Not Call Class including at least once after the consumer requesting Defendant or their agents to stop calling;

(c)   whether the calls violated the TCPA;

(d)   whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

36.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Classes.

37.   **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable

to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Dowell and the Do Not Call Registry Class)**

38.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

39.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on

the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

40.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

41.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

42.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

15

43.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Dowell and the Internal Do Not Call Class)**

44.     Plaintiff repeats and realleges paragraphs 1 through 37 of this Complaint and incorporates them by reference herein.

45.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf

16

such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

46.    Defendant, or an agent calling on behalf of Defendant placed calls to

Plaintiff and members of the Internal Do Not Call Class without implementing

internal procedures for maintaining a list of persons who request not to be called by

the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

47.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

48.    The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dowell individually and on behalf of the Classes, prays for the following relief:

a)    An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b)    An award of damages and costs;

c)    An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)    An injunction requiring Defendant to cease all unsolicited calling

activity, and to otherwise protect the interests of the Classes; and

e)    Such further and other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff Dowell requests a jury trial.


DATED this 7th day of November, 2022.


BECCI DOWELL, individually and on
behalf of all others similarly situated,


/s/ Andrew M. Carroll
Andrew M. Carroll
Carroll Law Office, P.C.
427 N Packard St.
Hammonton, NJ 08037
Telephone: (856) 426-9815
Fax: (856) 997-1031
andrewcarrollesq@gmail.com


Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

19